BARBARA W. USEN *vs.* RICHARD S. USEN.

Suffolk. March 5, 1971. — May 7, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Probate Court*, Amendment. *Evidence*, Privileged communication, Hospital record. *Error*, Whether error harmful.

At the trial of a petition under G. L. c. 208, § 30, by a divorced husband to restrain his former wife from removing their minor child from the Commonwealth, there was no abuse of discretion on the part of the probate judge in allowing a motion to amend the petition to one under § 28 to secure an award of custody of the child to the petitioner, the merits of which by agreement of counsel were heard at the resumption of the trial on a specified date shortly after allowance of the motion. [454–455]

At the trial of a proceeding in a Probate Court under G. L. c. 208, § 28, by a divorced husband against his former wife to secure custody of their minor child, the wife did not lose her claimed privilege under c. 233, § 20B, inserted by St. 1968, c. 418, to prevent psychotherapists as witnesses from disclosing communications recording conversations between them and her relative to the diagnosis or treatment of her mental or emotional condition merely because the communications were part of a hospital record [455–456]; nor was the application of such privilege excluded by (e) of c. 233, § 20B, where the procedure prescribed therein was not followed by the psychotherapists or the judge [456–457]; and heavy reliance by the judge on the communications rendered the error in their admission in evidence prejudicial [457].

PETITION filed in the Probate Court for the county of Suffolk on August 22, 1969.

A motion to amend the petition was allowed and the case was heard by *Mahoney*, J.

*John H. Henn* (*Jerome Preston, Jr.,* with him) for Barbara W. Usen.

*Gerald Gillerman* (*Steven R. Kaye* & *Joseph B. Abrams* with him) for Richard S. Usen.

BRAUCHER, J. This is an appeal by the mother of a minor child from a decree entered in the Probate Court removing

the child from her custody and awarding custody to the father. She claims the following errors: (1) The judge permitted at trial an amendment of a petition to restrain removal of the child from the Commonwealth under G. L. c. 208, § 30, transforming it into a petition for change of custody under G. L. c. 208, § 28. (2) The judge admitted testimony of the mother's psychotherapist without compliance with the requirements of G. L. c. 233, § 20B. In addition, she claims that the decree is not adequately supported by the evidence and the subsidiary findings. The judge made a report of material facts and the evidence is reported.

1. The parties were divorced on December 9, 1966, and custody of the child was awarded to the mother. On August 22, 1969, the father filed a petition for an order temporarily restraining the mother from removing the child from the Commonwealth. On August 26, 1969, the temporary restraining order prayed for was issued and temporary custody was awarded to the father but, by agreement, physical custody remained with the mother pending trial. On Friday, September 26, 1969, at the trial, the father moved to amend the petition to seek award of custody to him.

Over the mother's objection and exception, the judge allowed the motion to amend, "with the provision that this case will be put over to the first part of the week until you have an opportunity to produce evidence that you want and the type of evidence that you are required to present." Later on the same day, Friday, counsel for the mother (not her counsel on this appeal) agreed that the trial should resume Monday morning, if he were allowed "to answer the call of the list in Middlesex." Counsel for the father agreed to this, and the trial reconvened Monday, September 29, 1969, and lasted through Thursday, October 2, 1969.

The allowance of the motion to amend was a matter within the discretion of the judge. Rule 7 of the Probate Courts (1959). G. L. c. 231, § 51. See *Clifford* v. *Clifford*, 354 Mass. 545, 546–547. There was no abuse of discretion.

The only prejudice suggested concerns the time needed by the mother's counsel to prepare for trial. He did not ask for a continuance but agreed to the resumption of trial on a specified date after the motion to amend had been allowed.

2. The mother excepted to the admission of evidence disclosing communications between her and two psychotherapists, claiming privilege under G. L. c. 233, § 20B, inserted by St. 1968, c. 418.[1] The father called as a witness a doctor who had been her psychotherapist, and his extensive testimony disclosed conversations with her relating to the diagnosis and treatment of her mental and emotional condition. In addition, two letters written by psychotherapists in February, 1969, were admitted as part of a hospital record under G. L. c. 233, § 79. One letter was signed by the same psychotherapist who testified and the other by a second psychotherapist; each recorded conversations between her and the signing psychotherapist relative to the diagnosis or treatment of her mental or emotional condition. The father now argues that the hospital record properly became public information when admitted in evidence, and that the doctor's testimony does no more than follow closely his written opinion which forms a part of the hospital record.

"Apparently the legislation making this hearsay evidence [in hospital records] admissible was enacted primarily to relieve the physicians and nurses of public hospitals from the hardship and inconvenience of attending court as witnesses to facts which ordinarily would be found recorded in the hospital books." *Leonard* v. *Boston Elev. Ry.* 234 Mass. 480, 482. See *McClean* v. *University Club*, 327 Mass. 68, 75. There is no indication of any legislative purpose to forestall the protection of privileged communications, and if there were it would yield to subsequent legislation granting a privilege. The 1968 statute granting the privilege

---

[1] "Except as hereinafter provided, in any court proceeding . . . a patient shall have the privilege . . . of preventing a witness from disclosing . . . any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. . . ."

defines "communications" [2] to include "conversations . . . before, during or after institutionalization . . . and any records, memoranda or notes of the foregoing." We think it is clear that the patient did not lose her privilege to prevent disclosure of a communication merely because it was made part of a hospital record.

3. The father requested the judge to proceed under one of six exceptions stated in the 1968 privilege statute, negating application of the statute: "(e) In any child custody case in which either party raises the mental condition of the other party as part of a claim or defense, and the psychotherapist believes that disclosure is necessary because the mental condition of the patient would seriously impair his ability to care for the child, and thereafter makes such disclosure to the judge in chamber; and the judge then determines that the mental or emotional condition of the patient would in fact seriously impair his ability to provide suitable custody, and that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected."

Neither doctor testified that he held the belief required by the statute. The judge did not make any determination except that one of the doctors "is testifying in a custody case." Nor did he receive any disclosure "in chamber." There was indeed no attempt to follow the procedure prescribed.

"In Massachusetts, the area of privileges concerning confidential communications is limited. . . . No general physician-patient privilege exists (see *Kramer* v. *John Hancock Mut. Life Ins. Co.* 336 Mass. 465, 467) but by St. 1968, c. 418 (inserting G. L. c. 233, § 20B), a privilege has been created with respect to certain communications between a patient and a psychotherapist." *In the matter of Pap-*

---

[2] " 'Communications' includes conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing."

*pas,* 358 Mass. 604, 607. The 1968 statute seems to have been modeled on a statute enacted in Connecticut in 1961. Conn. 1961 Pub. Act 529, as amended, Conn. Gen. Sts. Anno. §§ 52–146d – 52–146j (Supp. 1970). See Fox, Psychotherapy and Legal Privilege, 53 Mass. L. Q. 307; Goldstein and Katz, Psychiatrist-Patient Privilege: The GAP Proposal and the Connecticut Statute, 36 Conn. Bar J. 175; Comment, 71 Yale L. J. 1226, 1251–1260. Compare *In re Lifschutz,* 2 Cal. 3d 415, 422, 431, stating that "a growing consensus throughout the country, reflected in a trend of legislative enactments, acknowledges that an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy," and referring to "the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor." We are not free to water down the legislative policy embodied in the statute by loose construction or by giving our approval to informal procedures different from those prescribed. It was error to admit the evidence after the claim of privilege without meticulous observance of the requirements of subparagraph (e). Such observance, unless waived, should be shown in the record or transcript.

4. The father contends that any error with respect to the privilege was not prejudicial in view of the other evidence and the judge's findings. The mother contends that gross deviations from the procedure prescribed by the 1968 statute can never be harmless. We need not pass on the latter contention, since it is clear that the judge relied heavily on the evidence erroneously admitted. Compare *Clifford* v. *Clifford,* 354 Mass. 545, 548.

5. The decree is reversed. The case is remanded to the Probate Court for further proceedings consistent with this opinion. Costs and expenses of appeal are to be awarded in the discretion of the Probate Court.

*So ordered.*